IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHARLES E. MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-411 (MTT) |
| | ) |
| NICHIHA USA, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Charles Marshall, an African-American male, brings this action against Defendant Nichiha USA, Inc., alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The Defendant has moved for summary judgment. (Doc. 29). The motion is **GRANTED**.

**I.    BACKGROUND**

The Defendant manufactures fiber cement products at its facility in Macon, Georgia.[1] (Doc. 29-2 at ¶ 2). The Plaintiff worked at this facility from March 27, 2012, until he was injured on April 5, 2014. (Doc. 29-2 at ¶¶ 3, 17). During his employment, the Plaintiff applied for a promotion eight times. (Doc. 29-2 at ¶ 25). He received one

---

[1] This fact is "denied" by the Plaintiff, although he does not say why. (Doc. 42-2 at ¶ 2). He "objects" to the fact because it is supported by the declaration of Herb Kraft, the Defendant's Human Resources Manager, and the information was not previously provided in response to the Plaintiff's interrogatories about Kraft's knowledge. (Doc. 42-2 at ¶ 2). This objection is overruled. Kraft's declaration, which simply contains historical information culled from the Defendant's files, is entirely consistent with what is stated in the interrogatory responses about the extent of his knowledge. *Compare* (Doc. 33), *with* (Doc. 42-9 at 4). Accordingly, this fact and others "not specifically controverted by specific citation to particular parts of materials in the record" are deemed admitted. M.D. Ga. L.R. 56; Fed. R. Civ. P. 56(e).

promotion but was demoted four months later.  (Doc. 29-2 at ¶¶ 158, 172).  He now claims he was demoted and did not receive the other promotions because of his race.

### A.     Maintenance Operation Specialist ("MOS")

The MOS position was created in October 2012 and "combined the specialties of machine operators and mechanics into one position."[2]  (Doc. 29-2 at ¶ 26).  The Plaintiff, who worked mostly as a machine operator, applied for the MOS position five times between October 2012 and February 2014.  (Doc. 29-2 at ¶¶ 3, 33, 172).  Hiring was conducted in waves, and for each wave there were several open positions.  (Docs. 29-2 at ¶ 26; 33 at ¶ 12).  A hiring committee selected candidates for interviews based on their job bid forms and resumes,[3] as well as on any knowledge the committee members had about a candidate.  (Docs. 32 at 66:22-67:6; 34 at ¶¶ 4-5; 35 at ¶ 4; 37 at ¶¶ 4-5).  The hiring committee consisted of Tracy Thomas, a Caucasian male, King Brumdage, an African-American male, and Jay Knighten, a Caucasian male.  (Docs. 29-2 at ¶¶ 7, 27, 29; 42-2 at ¶ 27).  The Plaintiff applied for the first wave of MOS positions on October 9, 2012.  (Docs. 29-2 at ¶ 40; 33 at ¶ 13).  Based on his job bid form and resume, the Plaintiff was selected for an interview.  (Doc. 29-2 at ¶ 45).  Everyone on the hiring committee knew the Plaintiff's race before the interview.  (Docs. 34 at ¶ 6; 35 at ¶ 9; 37 at ¶ 6).

---

[2] The Plaintiff "objects" to this fact because it is supported by the declarations of Tracy Thomas, Jay Knighten, and King Brumdage, and it was not previously provided in response to the Plaintiff's interrogatories about their knowledge.  (Doc. 42-2 at ¶ 26).  This objection is overruled.  Again, the declarations are consistent with what is stated in the interrogatory responses about the extent of their knowledge.  *Compare* (Docs. 34; 35; 37), *with* (Doc. 42-9 at 4-5).

[3] Human Resources created a job posting for the position that instructed those interested to fill out a form and listed the following qualifications: "ability to operate and repair all maintenance equipment; 2-3 years of mechanical experience preferred; basic knowledge of controls and operation of equipment (forming, cutting, raw material and autoclave, startup and cleanup); ability to troubleshoot pneumatics and hydraulics preferred; experience changing bearings and repairing pumps and valves; experience with welding (MIG stick), cut, bend and fabricate preferred; basic electrical experience preferred; must be able to work any shift and work overtime with short notice."  (Docs. 29-2 at ¶ 31; 32 at 157).

In their declarations, Thomas, Brumdage, and Knighten all say the Plaintiff's resume suggested he had the experience and skills required for an MOS position. (Docs. 34 at ¶ 6; 35 at ¶ 8; 37 at ¶ 6). In fact, Thomas testified in his deposition that the Plaintiff's resume showed more mechanical experience than the resumes of at least nine candidates who were eventually selected for an MOS position over the Plaintiff.[4] (Doc. 32 at 95:17-25, 102:3-7, 107:3-14, 111:1-6, 115:11-17, 122:12-16, 128:4-10, 133:3-7, 136:19-23, 144:19-24). They were not impressed, however, by the Plaintiff's interview. (Doc. 34 at ¶ 10). The hiring committee asked all of the candidates "basically the same types of questions," including "basic maintenance questions such as bearing, spindle and sprocket changes." (Docs. 34 at ¶ 7; 37 at ¶ 7). Thomas, Brumdage, and Knighten all say the Plaintiff did not answer many of the basic questions correctly and did not seem to have the same mechanical and maintenance knowledge as the other candidates. (Docs. 34 at ¶¶ 7-8; 35 at ¶ 10; 37 at ¶¶ 7-8).

Brumdage specifically says in his declaration that the Plaintiff "did not know how to handle problem solving situations that we presented him with," and "he stumbled through the steps when explaining how to change a bearing" and "skipped right over the basic safety necessity of lock-out tag-out." (Doc. 35 at ¶ 10). Knighten says he seemed "very nervous" and "studdered [sic] through a lot of the answers or second guessed himself." (Doc. 37 at ¶ 7). Thomas testified that when he asked the Plaintiff about how to change a bearing, the Plaintiff answered that he "would take the bearing off and put a new bearing on." (Doc. 32 at 70:4-71:4). When Thomas asked the Plaintiff "to walk

---

[4] Come to find out, the Plaintiff appears to have misrepresented his professional experience on his resume. Although he lists "maintenance mechanic" as his title at Industrial Air Inc., the Plaintiff admitted in his deposition that his title was never maintenance mechanic and he "misstated that." (Doc. 31 at 50:2-4, 52:19-22, 60:18-20, 337).

[him] through the steps of how to do that," the Plaintiff did not give him an answer. (Doc. 32 at 71:4-17). Thomas testified that the Plaintiff similarly did not give him an answer to his question about how to change a sprocket, and when Thomas asked the Plaintiff about how to replace a spindle, the Plaintiff answered that he had never done it before and did not know. (Doc. 32 at 72:1-73:10). According to Thomas, the hiring committee discussed the Plaintiff's interview after he left, and everyone agreed he was "not prepared to be an MOS." (Doc. 32 at 80:19-81:10).

After the hiring committee conducted all of the interviews, which Brumdage approximated to be between 17 and 20, they discussed the candidates and then decided whom to hire. (Docs. 34 at ¶ 9; 35 at ¶¶ 5, 7; 37 at ¶ 9). Thomas, Brumdage, and Knighten all agreed the Plaintiff "lacked the same skill set as the other interviewees." (Docs. 34 at ¶ 10; 35 at ¶ 11; 37 at ¶ 10). They "jointly" decided not to offer the Plaintiff an MOS position. (Docs. 34 at ¶ 10; 35 at ¶ 11; 37 at ¶ 10). Instead, one African-American and three Caucasian candidates were awarded an MOS position in the first wave of hiring. (Doc. 33 at ¶ 14). Unlike the Plaintiff, each had worked as a maintenance mechanic for the Defendant. (Docs. 33 at ¶ 14; 37 at ¶ 11). According to Knighten, "[i]t is easier to turn a mechanic into an operator than vice versa." (Doc. 37 at ¶ 11).

The Plaintiff tells a dramatically different story. He says he correctly answered all of the questions he was asked during his interview. (Doc. 42-3 at ¶¶ 11, 15). He specifically says in his declaration that he "answered the questions concerning bearings and sprocket changing correctly" and that the "correct way to change a bearing depends on what type of bearing you are changing[;] [n]ot all bearings are changed the same

way." (Doc. 42-3 at ¶¶ 7, 12). In his deposition, the Plaintiff testified that he thought Knighten asked him the question about how to change a bearing and that he gave a detailed answer. (Doc. 31 at 140:15-142:25). Indeed, the Plaintiff testified that after he gave his answer, Knighten said, "Well, I see you know how to change a bearing." (Doc. 31 at 142:25-143:4). The Plaintiff says he received similar praise and accolades from Thomas and Brumdage. According to the Plaintiff, Thomas approached him after his interview and said, "I'm not sure what they're going to do with these jobs, but I just wanted to shake your hand. You had one hell of an interview." (Doc. 31 at 146:5-13). Thomas testified that he did not tell the Plaintiff he had "one hell of an interview." (Doc. 32 at 87:13-88:5). The Plaintiff likewise testified that Brumdage approached him two or three days after the interview and "objected to giving all the MOS positions to the maintenance guys because the jobs was brought [sic] and created for the forming line."[5] (Doc. 31 at 156:23-158:18). Based on this comment, the Plaintiff says he did not believe that Brumdage failed to select him for an MOS position because of his race. (Doc. 31 at 158:22-24; 220:21-222:8).

      The Plaintiff submitted bids for an MOS position during four more waves of hiring but was only selected for two more interviews. (Docs. 29-2 at ¶¶ 95, 120; 33 at ¶¶ 15, 21, 26, 28). Thomas, Brumdage, and Knighten all say the Plaintiff's resume was again impressive, and they thought "he may have gained experience since the last interview." (Docs. 34 at ¶ 11; 35 at ¶ 12; 37 at ¶ 12). Thomas says they "thought he deserved another shot at an interview." (Doc. 34 at ¶ 11). But according to all of them, both interviews "went almost exactly like his first one," and the Plaintiff "was not on the same level of skills as compared to the other interviewees." (Docs. 34 at ¶ 11; 35 at ¶ 12; 37

---

[5] The Plaintiff worked as a machine operator in the forming department. (Doc. 29-2 at ¶ 4).

at ¶ 12). The Plaintiff testified that in his second interview he was asked questions that were "something along the lines of … the first interview" and that his responses were "[p]robably something along the lines" of the responses he gave in his first interview. (Doc. 31 at 163:15-24). He testified that he was asked the same basic questions in his third interview, but he did not recall what his responses were. (Doc. 31 at 167:2-8). The hiring committee again discussed the Plaintiff and the other candidates, again found him "lacking in comparison," and again jointly decided not to select him for an MOS position. (Docs. 34 at ¶ 12; 35 at ¶ 13; 37 at ¶ 13).

Thomas, Brumdage, and Knighten all say that the decisions on whom to select for the MOS positions were "always based on who we thought was the most qualified for the position," and Thomas and Knighten say the Plaintiff "was not comparably qualified to the individuals that were selected for the positions." (Docs. 34 at ¶ 13; 35 at ¶ 15; 37 at ¶ 15). In his deposition, Thomas specifically addressed most of the candidates who were awarded an MOS position and testified that they answered their interview questions correctly and better than the Plaintiff. (Doc. 32 at 96:1-4, 101:2-19, 122:5-25, 113:25-114:2, 115:6-10, 119:16-24, 131:19-132:7, 133:8-16, 126:14-19, 128:11-17, 135:14-23, 136:24-137:5, 139:2-7, 107:15-22, 110:9-111:13, 150:16-151:10). Brumdage adds,

> [The Plaintiff] always ranked at the bottom of the list (as in he was the least impressive with the least amount of skills and knowledge). In fact, I would rank [him] at the bottom of the list for all of the interviews I participated in. I would also rank him at the bottom of a list for employees that ever worked for me in general.

(Doc. 35 at ¶ 15).

Ultimately, two African-American and two Caucasian candidates were awarded an MOS position in the wave of hiring that the Plaintiff bid for on April 23, 2013. (Doc. 33 at ¶¶ 15-16). One African-American and three Caucasian candidates were awarded an MOS position in the wave of hiring that the Plaintiff bid for on July 16, 2013. (Doc. 33 at ¶¶ 21-22). One African-American and one Caucasian candidate were awarded an MOS position in the wave of hiring that the Plaintiff bid for on August 27, 2013. (Doc. 33 at ¶¶ 26, 27). Finally, one African-American candidate was awarded an MOS position in the wave of hiring that the Plaintiff bid for on February 20, 2014. (Doc. 33 at ¶¶ 28-29).

### B.  Saw Blade Sharpener

The Plaintiff applied for a saw blade sharpener position on August 7, 2013. (Doc. 31 at 169:8-16). Kenichi Saiya, who is Asian-American, selected the Plaintiff for an interview and awarded him the position. (Doc. 29-2 at ¶¶ 155-57). The Plaintiff started on October 4, 2013, and received a pay increase of approximately $3.00 an hour. (Doc. 29-2 at ¶ 158). As a saw blade sharpener, the Plaintiff was responsible for operating a machine that sharpens blades for use in the Defendant's facility. (Doc. 29-2 at ¶ 159). The Plaintiff worked with Calvin Hollingshed and Willie Chambers, who are both African-American, and was supervised by Saiya and Hiroki Tsutsumi, who is Asian-American. (Docs. 29-2 at ¶¶ 160-61; 36 at ¶ 8).

The Plaintiff admits that in a period of 4 months he had at least four "performance incidents" and damaged several pieces of equipment. (Docs. 29-2 at ¶¶ 163, 167; 42-2 at ¶¶ 163, 167). These included damaging a grinding wheel in December 2013 and a dress down wheel in January 2014. (Doc. 29-2 at ¶¶ 164-66). There was also an incident in February 2014 that led to a written warning and a recommendation from

-7-

Saiya that the Plaintiff be removed from the position. (Docs. 29-2 at ¶¶ 168-71; 36 at ¶¶ 15-17). The Plaintiff was demoted back to an operator position on February 10, 2014. (Docs. 29-2 at ¶ 172; 36 at ¶ 17). In his declaration, Saiya says, "[d]uring my time supervising, I have never had another employee have this many mistakes and performance issues. I have never had another employee damage machinery/equipment this many times either." (Doc. 36 at ¶ 18).

### C. Maintenance Mechanic

The Plaintiff applied for a maintenance mechanic position on February 12, 2014. (Doc. 33 at ¶ 8). Knighten would have been responsible for interviewing and selecting candidates; however, the position was delayed in being filled and so no candidates were hired at that time. (Doc. 33 at ¶ 9). The selection began again in September 2014, and Ray Parker, who is Caucasian, was hired on September 30, 2014. (Docs. 33 at ¶ 9; 42-2 at ¶ 38). At that time, the Plaintiff was not an active employee because he was not able to work after being injured on April 5, 2014. (Docs. 29-2 at ¶¶ 184-85; 33 at ¶ 9). "Regardless," according to Knighten, "based on his failed interviews for the MOS position, I do not believe [the Plaintiff] has the right qualifications or skills to be a maintenance mechanic at Nichiha." (Doc. 37 at ¶ 14).

### D. Operation Specialist

Finally, the Plaintiff applied for an operation specialist position on March 17, 2014. (Doc. 29-2 at ¶ 181). Brumdage was responsible for interviewing and selecting candidates, and two African-American candidates were hired on April 7, 2014. (Doc. 29-2 at ¶¶ 182-83).

## II. DISCUSSION

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B.     Title VII and 42 U.S.C. § 1981

In the employment context, Title VII and 42 U.S.C. § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Although the Plaintiff brings claims under Title VII and section 1981, he incorporates his arguments under Title VII into his section 1981 claim. (Doc. 42-1 at 20). Therefore, the Court will analyze both claims under the Title VII framework.

### C.     *McDonnell Douglas* Framework

A Title VII plaintiff may prove his case directly or circumstantially. Here, there is no direct evidence of discrimination, so the Plaintiff must rely on circumstantial evidence. The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly depending on the nature of the claim. If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence sufficient to raise a genuine issue of fact as to

whether it discriminated against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (internal quotation marks and citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination. "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Burdine*, 450 U.S. at 256). Put another way, "[a] plaintiff may … survive summary judgment by 'presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-discriminatory reasons.'" *Freeman v. Perdue Farms Inc.*, 496 F. App'x 920, 925 (11th Cir. 2012) (quoting *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 965 (11th Cir. 1997)). "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citation omitted).

The plaintiff's burden at the pretext stage merges with her "'ultimate burden of persuading the court that she has been the victim of intentional discrimination.'" *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting *Burdine*, 450 U.S. at 256); *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). Thus, the critical decision "is whether the plaintiff has 'create[d] a triable issue concerning the employer's discriminatory intent.'" *Flowers*, 803 F.3d at 1336 (alteration in original) (quoting *Smith v. Lockheed–Martin Corp.*, 644 F.3d

1321, 1328 (11th Cir. 2011)).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993) ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.").  In fact, it will be a "rare case[] where, despite the existence of a *prima facie* case and sufficient evidence of pretext, no rational jury could conclude that the [employer's action] was discriminatory."  *Motley v. Fulton Cty., Ga.*, 815 F.3d 733, 734 (11th Cir. 2016) (per curiam).

### 1. Failure to Promote

The Plaintiff argues the Defendant failed to promote him to the MOS, maintenance mechanic, and operation specialist positions because of his race.  (Doc. 42-1 at 3-4).  For a failure-to-promote claim, a plaintiff can establish a prima facie case, "and thus raise an inference of discriminatory intent," by demonstrating that "(i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).  Where an employer does not hire anyone for the plaintiff's coveted position, the fourth element can be satisfied by showing that "after his rejection, the position remained open and the employer continued to seek applicants."  *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998) (quoting *McDonnell Douglas*, 411 U.S. at 802).

The Defendant argues the Plaintiff cannot establish the fourth element of his prima facie case for the MOS and operation specialist positions because they were filled with individuals who are African-American. (Doc. 29-1 at 14-15). The Defendant argues the Plaintiff cannot meet his prima facie case for the maintenance mechanic position because the hiring process was placed on hold after he applied and did not begin again until almost six months after he ceased being an active employee. (Doc. 29-1 at 13). Without distinguishing between the MOS, operation specialist, and maintenance mechanic positions, the Plaintiff argues that "people outside of [his] class were given the job positions he applied for." (Doc. 42-1 at 4). Notably, the Plaintiff does not dispute that hiring for the MOS positions was conducted in waves or that someone within his protected class was awarded the position in each wave. (Docs. 42-2 at ¶¶ 26, 76, 98, 123, 137, 143).

When an employer chooses one African-American applicant over another, it is "implausible, if not logically impossible, for the decision to have been racially discriminatory." *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534 n.4 (11th Cir. 1984). This is not necessarily fatal to a prima facie case, and a plaintiff can still establish that he was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Id.* at 1534 (citation omitted); *see Gibbons v. Cty. Bd. of Educ. of Richmond Cty.*, 454 F. App'x 720, 722 (11th Cir. 2011) (considering whether the decision "was a pretextual device specifically designed to disguise an act of discrimination"); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (requiring courts to "consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the

plaintiff"). The Plaintiff, however, does not present any evidence regarding the hiring committee's decisions to award the other African-American candidates the promotions he applied for. He does not even acknowledge, much less address, the Defendant's arguments. Accordingly, the Plaintiff has clearly failed to establish his prima facie case for the operation specialist position and the MOS position he bid for on February 20, 2014, which were both awarded only to African-American candidates. Moreover, the Plaintiff has failed to establish his prima facie case for the maintenance mechanic position because it is undisputed that hiring was placed on hold, and when it resumed he was not an active employee that could have been promoted. *See Oliver v. Nat'l Beef Packing Co., LLC*, 294 F. App'x 455, 458 (11th Cir. 2008) (noting that "a plaintiff must have been employed by the defendant employer to bring a failure to promote claim").

Although the hiring committee awarded MOS positions to African-American candidates *and* candidates outside of the Plaintiff's protected class in the remaining four waves of hiring, this likely does not make it any less implausible that the Defendant's decisions were racially discriminatory. In effect, the Plaintiff says he can establish his prima facie case because the hiring committee (which had an African-American member) did not award *all* of the open MOS positions to African-American candidates. However, "when the plaintiff applies for a position for which there are a number of openings, it is often impossible to determine which successful applicant for the position actually got the 'plaintiff's' berth for purposes of comparing class status." *Walker*, 158 F.3d at 1186 n.19. The Eleventh Circuit has held that "[i]n such a situation, it is sufficient to identify *any* successful applicant for the position." *Id.* (emphasis in original).

Accordingly, the Court will assume that the Plaintiff has established a prima facie case for these MOS positions.[6]

The Defendant has met its burden of articulating legitimate, nondiscriminatory reasons for its actions: the hiring committee determined that the Plaintiff did not interview well and that he was not the most qualified for the MOS positions.  (Doc. 29-1 at 15, 20).  To establish pretext, the Plaintiff essentially makes two points.  First, he says that Thomas admitted his resume was better than the other candidates.  (Doc. 42-1 at 13).  It is interesting that the Plaintiff makes this point.  While Thomas admitted that the Plaintiff's resume was better than the other candidates (and that this is why he got the interviews in the first place), the Plaintiff admitted in his deposition that he "misstated" his professional experience on his resume.  It is not surprising, then, that each member of the hiring committee believed the Plaintiff did not appear in his interviews to have the same knowledge or skill set as the other candidates.  In any event, the fact that the Plaintiff's resume was impressive does not rebut the Defendant's proffered nondiscriminatory reasons.

Second, the Plaintiff argues that his recollection is that he did well in the interviews; indeed, so well that, according to him, one of the hiring committee members wanted to shake his hand to congratulate him for his stellar performance.  (Doc. 42-1 at 12-16).  In his view, the hiring committee members "could not have honestly believe[d] [he] didn't have the skills for the MOS or Maintenance positions" because "[he] answered all the questions correctly during the interview."  (Doc. 42-3 at ¶ 15).  But the

---

[6] The Defendant does not move for summary judgment on the ground that these claims are not actionable because they did not arise within 180 days prior to the filing of the EEOC charge.  *See, e.g.*, *Bennett v. Chatham Cty. Sheriff Dep't*, 315 F. App'x 152, 161 (11th Cir. 2008); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271-72 (11th Cir. 2002); (Doc. 17 at 5).

"inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266. Even assuming that the Plaintiff has created an issue of fact as to whether he did well in his interviews, he has not rebutted the Defendant's evidence that the hiring committee unanimously felt that others had done much better. Therefore, the Plaintiff has failed to meet this "reason head on and rebut it." *Alvarez*, 610 F.3d at 1266.

The Plaintiff has failed to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997). Moreover, the question is not "whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Here, the Plaintiff has failed to create "a triable issue concerning the employer's discriminatory intent."[7] *See Flowers*, 803 F.3d at 1336. Accordingly, the Defendant is entitled to judgment as a matter of law on the Plaintiff's failure to promote claims.

---

[7] The Plaintiff also argues that he can show pretext because the Defendant allegedly violated its own policies when some Caucasian employees were awarded positions within six months of being moved into another position and without submitting a job bid. (Doc. 42-1 at 18). The Plaintiff makes this claim based on his counsel's review of these employees' personnel files, which led counsel to conclude that there was no job bid form in the files of Brooks Nesmith, James Bateman, Justin Christensen, and Brian Hopson. (Doc. 42-4). In its reply, the Defendant attached a supplemental declaration of Kraft, who says the files do contain job bid forms and produces copies of those forms. (Docs. 48-1; 33 at 53). Kraft also says the Defendant did not violate its own policies by awarding positions to Bateman and Tommy Higdon. *Compare* (Doc. 42-2 at ¶¶ 81, 123), *with* (Docs. 48-1 at ¶¶ 4, 6). Even if the Plaintiff is correct that the Defendant violated its own policies, he has not shown pretext. *See, e.g.*, *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 n.18 (11th Cir. 2013) ("Indeed, 'even where preselection violates corporate personnel policies, it does not necessarily indicate' that the employer based a promotion decision on impermissible characteristics." (citation omitted)).

**2. Demotion**

The Plaintiff alleges in his amended complaint that the Defendant demoted him from the saw blade sharpener position because of his race. Although the Plaintiff failed to respond to the Defendant's motion for summary judgment on this claim, courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The Plaintiff has failed to show that the Defendant's articulated reasons for demoting him were false. In fact, he admits he had at least four "performance incidents" and damaged several pieces of equipment. (Docs. 29-2 at ¶¶ 163, 167; 42-2 at ¶¶ 163, 167). Accordingly, the Defendant is entitled to judgment as a matter of law on this claim.

### III.   CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (Doc. 29) is **GRANTED**.

**SO ORDERED**, this 21st day of July, 2016.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT